# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

GLENDA FAYE SPAIN,        )
                                      )
      Plaintiff,               )          Case No. 3:14-cv-0293
                                      )          Senior Judge Haynes
v.                                )
                                      )
CAROLYN W. COLVIN,        )
Acting Commissioner of Social Security,  )
                                      )
      Defendant.            )

## MEMORANDUM

Plaintiff, Glenda Faye Spain, filed this action under 42 U.S.C. § 405(g) against the Defendant Carolyn Colvin, Acting Commissioner of Social Security, seeking judicial review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

Before the Court is Plaintiff's motion for judgment on the record (Docket Entry No. 17) contending, in sum, that the Administrative Law Judge ("ALJ") erred by failing to consider all of Plaintiff's impairments; by failing to determine a function-by-function residual functional capacity assessment ("RFC"); by including in the RFC a sit/stand option but not specifying the frequency required; and by failing to adopt a previous ALJ's findings. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

Plaintiff previously applied for DIB and her claim was denied after a hearing. Plaintiff's first hearing was held on October 18, 2010. (Docket Entry No. 14, Administrative Record, at 97)[1]. ALJ Brian Dougherty determined that Plaintiff had the following severe impairments:

---

[1]The Court's citations are to the pagination in the Administrative Record, not in the electronic case filing system.

obesity; COPD; asthma; diabetes mellitus; hypertension; spondylosis, status post lumbar laminectomy with chronic lower back pain; mood disorder with depressive features; and panic attacks. Id. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. The ALJ found that Plaintiff had the residual functional capacity to perform sedentary work with exertional and non-exertional limitations. Id. at 102. The ALJ found that Plaintiff could perform past relevant work and concluded that Plaintiff was not under a disability. Id. at 107-08.

Plaintiff filed a second application that was denied on April 27, 2011. Id. at 19. Plaintiff requested reconsideration that was denied on August 18, 2011. Id. Plaintiff's request for a hearing was granted, and on August 20, 2012, ALJ Michelle Thompson conducted a hearing. Id. The ALJ evaluated Plaintiff's claims using the sequential evaluation process set forth at 20 C.F.R. § 416.1520(a). Id. at 20-21. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between October 19, 2010, the alleged onset date of disability, and March 31, 2012, the last date insured. Id. at 21.

At step two, the ALJ determined that Plaintiff has the following severe impairments: obesity; COPD; asthma; diabetes mellitus; hypertension; spondylosis, status post lumbar laminectomy with chronic lower back pain; mood disorder with depressive features; and panic attacks. Id. at 21-22. These impairments "significantly limited the claimant's ability to perform basic work activities." Id. at 22.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments found in

20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

At step four, the ALJ determined that for this period Plaintiff had the residual functional capacity to perform sedentary work, except that she was limited to occasionally lifting ten pounds; frequently lifting five pounds; standing/walking up to two hours in an eight-hour workday for 30 minutes at a time; sitting six hours in an eight-hour workday for 45 minutes at a time; occasionally pushing/pulling; never climbing ladders; occasionally climbing stairs or crouching; and frequently balancing, stooping, kneeling, or crawling. Additionally, Plaintiff requires a sit/stand option; should avoid concentrated exposure to fumes and dust; can understand, remember, and carry out simple and detailed instructions and tasks; can interact with the public, co-workers, and supervisors; and can adapt to infrequent gradual change. Id. at 24.

At step five, the ALJ stated that Plaintiff is capable of performing past relevant work as a loan clerk. Id. at 27-28. The ALJ concluded that Plaintiff was not disabled for the period of October 19, 2010 to March 31, 2012, the last insured date, within the meaning of the Act and was not entitled to disability insurance benefits. Id. at 20, 28. Following this decision, Plaintiff requested a review. Id. at 14. Plaintiff's request for review was denied on December 3, 2013. Id. at 1-6.

## A. Review of the Record

Plaintiff previously filed a claim for DIB on October 29, 2008. (Docket Entry No. 14 at 97). In this application, Plaintiff alleged an onset date of disability of March 3, 2008. Id. Plaintiff was initially denied on February 6, 2009 and again upon reconsideration on April 24, 2009. Id. Plaintiff requested a hearing and one was held on September 15, 2010 before ALJ Brian Dougherty. Id. at 108. ALJ Dougherty decided that Plaintiff had not been under a

disability between March 3, 2008 and the date of the decision, October 18, 2010. Id. at 97. Plaintiff did not request review. Plaintiff filed the claim at issue here on November 15, 2010, alleging an onset date of disability of October 19, 2010, the day after the final decision in her previous action. Id. at 164.

On October 19, 2010, Plaintiff's onset date, Plaintiff completed a fatigue questionnaire. Id. at 178-79. Plaintiff stated that she had been affected by fatigue since 2007. Id. at 179. Plaintiff described this condition as keeping her from working and that when she tried to work, "[she] couldn't handle it." Id.

On November 1, 2010, Plaintiff was evaluated at Southridge Psychological. Id. at 366-67; 551-52. The provider noted that "[claimant] reports doing well, 'everythings all right', sleep: disrupted, 'i'm trying to... have weird dreams' on trazodone, appetite: no change, [weight] stable, mood: 'still depressed.'" Id. at 366. Plaintiff's primary diagnosis is "mood disorder due to general medical condition with depressive features," diagnosed on April 28, 2009. Id.

On December 21, 2010, Plaintiff completed a pain questionnaire. Id. at 210-13. Plaintiff stated that her pain began in 2007 when she had "a hard fall at work." Id. at 210. According to Plaintiff, medications, a heating pad, and hot muscle rub relieved her pain. Id. at 210-11. Plaintiff stated that she "cannot stand/sit for more than 30 min at a time. [Tire] easily." Id. at 211.

On December 21, 2010, Plaintiff completed a function report. Id. at 214-21. Plaintiff stated that she "cannot focus. Constant pain, cannot stand or sit for lengths at a time depression, cry's a lot. Panick attacts, diebetic attacts (sic), stressed. No energy." Id. at 214. Plaintiff reported that she can walk for thirty minutes before needing to stop and rest and that she needs to

rest for fifteen to twenty minutes. Id. at 219.

On January 5, 2011, Dr. Donita Keown, a medical consultant, evaluated Plaintiff. Id. at 434-442. Dr. Keown noted that Plaintiff "is seeking disability benefits because of chronic low back pain that she states has resulted from degenerative spinal disease along with injury she sustained at work a few years ago." Id. at 434. Plaintiff also complained of COPD, and Dr. Keown noted that she was a "smoker for 25 to 30 years. ... She is still smoking." Id. At the evaluation, Plaintiff "brought a rolling walker that she says that she has used for years now." Id. at 435. Dr. Keown also reported that "[p]ain behavior and symptom magnification are noted." Id. Regarding the walker, Dr. Keown stated that "[c]laimant insists upon using a rolling walker. She is not limping. She is pushing the rolling walker along which seems to be supporting only the upper body weight. She insists that she would fall if she were to attempt ambulation without the device." Id. at 436.

Dr. Keown limited Plaintiff to frequently lifting/carrying 21 to 50 pounds and occasionally lifting/carrying 51 to 100 pounds. Id. at 437. Dr. Keown also limited Plaintiff to frequently carrying 11 to 20 pounds, and occasionally carrying 21 to 50 pounds and 51 to 100 pounds. Id. Dr. Keown restricted Plaintiff sitting for two hours at a time, for a maximum of eight hours in a workday; standing one hour, with the maximum per day not marked; and walking one hour at a time, for a maximum of seven hours a day. Id. at 438. Dr. Keown limited Plaintiff to frequently stooping and to occasionally climbing stairs and ramps, ladders or scaffolds, kneeling, crouching and crawling. Id. at 439.

On January 6, 2011, a psychological consultant evaluated Plaintiff. Id. at 443-48. Plaintiff reported several instances of suicidal ideation over the past six months. Id. at 445-46.

5

Plaintiff's primary diagnosis was "Depressive Disorder, [not otherwise specified] (provisional)."

Id. at 446. The evaluator concluded:

> [Plaintiff] may demonstrate mild difficulty in her ability to consistently understand and remember complex instructions, directions, and procedures within the work setting. She may demonstrate mild-to-moderate difficulty in her ability to exhibit sustained concentration and persistence for making complex decisions within the job setting. She may demonstrate moderate-to-severe difficulty in her ability to persist during workdays without interruptions from psychological symptoms. She may demonstrate mild-to-moderate difficulty in her ability to consistently and appropriately interact with coworkers, supervisors, and the public within the job site. She may demonstrate mild difficulty in her ability to consistently and appropriately respond to changes in the work schedule on an independent basis. She may demonstrate moderate-to-severe difficulty in her ability to consistently and appropriately take needed precautions against perceived dangers within the job setting.

Id. at 447.

On January 10, 2011, Plaintiff cancelled an appointment at Centerstone. Id. at 550. On January 19, 2011, Plaintiff again visited Southridge Psychological. Id. at 545-47. Plaintiff "state[d] she was turned down for disability in Nov and things have gotten worse since then. She does not want to get out of bed most days. [S]he feels miserable all the time." Id. at 545. During the medication maintenance portion of the appointment, Plaintiff reported that she was "doing'okay'," "depressed" and "depressed mood [related to] holidays and SS denial." Id. at 555.

On February 7, 2011, a psychiatric review was conducted. Id. at 449-62. Plaintiff was listed with a medically determinable impairment of "mood [disorder] due to [general medical condition] and [with] depressive [features]." Id. at 452. Plaintiff was also noted to have moderate difficulties in activities of daily living, maintaining social functioning and maintaining concentration, persistence, or pace. Id. at 459.

Also, on February 7, 2011, a mental residual functional capacity assessment was conducted. Id. at 463-66. Plaintiff was moderately limited in the following: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently of others. Id. at 463-64. Plaintiff did not have any marked limitations. Id.

In conclusion, the evaluator wrote, "[c]laimant can understand and remember simple and detailed (1-3 STEP) instructions due to [symptoms] of anxiety/depression..;" "[c]laimant can carry out simple and detailed (1-3 STEP) instructions.. [claimant] can concentrate and pay attention for 2 hrs given customary breaks and rests.. 1-2 days/month may be missed secondary to symptomatology.. [claimant] should have infrequent contact [with] coworkers/supervisors;" "[i]nteraction with the public should be one-on-one[.] Feedback and criticism should be supportive;" and "[c]hanges in the workplace should be presented infrequently and in a gradual manner[.] Help is needed to set long term goals and plans, but claimant can manage day to day

ones[.]" Id. at 465.

On February 17, 2011, Plaintiff failed to show for an appointment at Centerstone. Id. at 553. On April 8, 2011, Plaintiff was admitted to Horizon Medical Center. Id. at 490-505. Plaintiff was admitted for "shortness of breath, cough which was nonproductive." Id. at 492. Another intake report noted that she was admitted for "[s]hortness of breath, fever," complaints of "24-48 hours of worsening fever, cough, dyspnea, and wheezing," "acute asthma and COPD exacerbation." Id. at 503. Plaintiff was given a nebulizer treatment, but her symptoms did not improve. Id. at 492. Plaintiff was placed in the ICU "due to her degree of hypoxia. [The nurse practitioner did] believe that her lung exam and likely chronic pulmonary disease including obesity, hypoventilation and probable underlying sleep apnea justify her degree of hypoxia." Id. at 505. Plaintiff's chest x-ray was clear and "[o]nce shortness of breath improved, she was transferred to the regular medical floor." Id. at 492. It was also noted that Plaintiff "[c]ontinues to smoke a pack to 2 a day." Id. at 504. Plaintiff was discharged in stable condition. Id. at 492.

On April 14, 2011, Plaintiff visited Southridge Psychological. Id. at 542-44. Plaintiff reported that she had been "sick and in the hospital," "so sick her family was called in because they thought she would die." Id. at 542. On the same visit, Plaintiff had a medication maintenance meeting, where she reported that "she was hospitalized for 5 days [related to] asthma- almost needed a tracheostomy, also found out she has a spot on her liver and lung- scheduled for [follow up] [appointment] 4/27/11." Id. at 548. Plaintiff also "denie[d] significant depression." Id.

On April 26, 2011, Dr. Martha Goodrich conducted a physical residual functional capacity assessment. Id. at 561-68. Dr. Goodrich limited Plaintiff to occasionally lifting and/or

8

carrying fifty pounds, frequently lifting and/or carrying twenty-five pounds, standing and/or walking for a total of six hours in a workday, and sitting for a total of six hours in a workday. Id. at 562. Dr. Goodrich also limited Plaintiff to occasionally climbing ramps, stairs, ladders, ropes and scaffolds, kneeling and crawling; and limited to frequently balancing, stooping and crouching. Id. at 563. Plaintiff was to avoid concentrated exposure to "fumes, odors, dusts, gases, poor ventilation, etc." and to "hazards (machinery, heights, etc.)." Id. at 565. Dr. Goodrich noted that Plaintiff "continued smoking despite TS orders to [quit]" resulting in "[e]xacerbation requiring hospital [treatment] in 2/10 but none subsequent." Id. at 562.

Regarding Plaintiff's symptoms, "[t]he [claimant's] allegations of functional disability significantly exceed the limitations reasonably expected from the medical findings. The [claimant] demonstrated symptom magnification and FTC at the [clinical exam]." Id. at 566.Dr. Goodrich also noted that Plaintiff "presents to the [clinical examiner] using a [front wheel walker]. Based on [clinical examiner] report and [medical source statement] this is not necessary and in fact the gait [is] normal," "[clinical examiner] documented several times the [claimant's] symptoms magnification," "[t]hese [medically determinable impairments] are NON-SEVERE." Id. at 562-63. The assessment concludes that "the [claimant] is limited to a medium [functional] level due to COPD/asthma and [history of] L5 hemilaminectomy." Id. at 563.

On April 27, 2011, a vocational consultant completed a vocational analysis worksheet. Id. at 222-25. The vocational consultant reported that Plaintiff could lift a maximum of fifty pounds, or twenty-five pounds frequently; could stand/walk for six hours a day; could sit for six hours a day; and did not mark limitations for pushing/pulling. Id. at 222. Plaintiff could occasionally climb ramps, stairs, ladders, ropes and scaffolds, kneel and crawl; and could

frequently balance, stoop and crouch. Id. Plaintiff was moderately limited in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently of others. Id. Plaintiff did not have any marked limitations. Id. The consultant also noted that Plaintiff should avoid concentrated exposure to "[f]umes, odors, dusts, gases, poor ventilation, etc" and to "[h]azards (machinery, heights, etc)." Id.

On April 27, 2011, Plaintiff's application was denied. Id. at 115. On June 15, 2011 Plaintiff requested reconsideration. Id. at 121. On June 30, 2011, Centerstone produced a report of Plaintiff's current Diagnostic and Statistical Manual ("DSM") diagnosis. Id. at 560. Plaintiff had a primary diagnosis of "mood disorder due to general medical condition with depressive features," with a comment that Plaintiff "also has anger outbursts with yelling and cursing." Id. Plaintiff's Global Assessment of Functioning ("GAF") Score was noted at 43, with a highest score and lowest score also listed at 43. Id.

On July 7, 2011, Plaintiff completed another function report. Id. at 233-41. Plaintiff reported that she "can't stand or sit for any length of time. [She was] unable to lift, reach and bend due to [her] painful back and legs. [She has] no energy." Id. at 233. Plaintiff also stated that she "can't move around, lift etc for more than 30 min at a time." Id. at 239.

Also, on July 7, 2011, Plaintiff visited Southridge Psychological. Id. at 625-29. Plaintiff showed "slight improvement" in all of her goals. Id. at 625. It was noted that Plaintiff "continues to struggle with her health." Id. Regarding mood, Plaintiff stated that she was "'doing okay,' denie[d] significant depression." Id. at 627.

On August 4, 2011, a psychiatric review was conducted. Id. at 569-82. Plaintiff's medically determinable impairment was listed as "mood disorder due to medical condition." Id. at 572. Plaintiff was given moderate limitations in activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, or pace. Id. at 579. The consultant noted that "this is a Drummond case. Date of ALJ Decision = 10/18/10," and concluded that there was "no substantial or material change in severity of psych symptoms or level of functioning. Psych symptoms continue to be effectively managed with medication with no change in psych functioning. ALJ findings are herein adopted." Id. at 581.

Also, on August 4, 2011, a mental residual functional capacity assessment was conducted. Id. at 583-86. Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to respond appropriately to changes in the work setting. Id. at 583-84. Plaintiff did not have any marked

limitations. Id. The medical consultant concluded that Plaintiff "can perform simple and detailed tasks over a full workweek," "can interact regularly with general public, supervisors and co-workers" and "can adapt to gradual or infrequent changes." Id. at 585.

On August 17, 2011, a physical residual functional capacity assessment and a mental residual functional capacity assessment were conducted. Id. at 587-602. A Disability Determination Services worksheet attached to this assessment states in the Drummond & Dennard section that a "[s]ignificant change (improvement/worsening) did not occur," and explains that "[t]he claimant has had one additional exacerbation of COPD with [inpatient] treatment, but no evidence to support improvement or worsening of overall functioning. ALJ decision adopted." Id. at 588.

The physical assessment limited Plaintiff to lifting and/or carrying ten pounds occasionally and five pounds frequently; standing and/or walking for a total of two hours in an eight-hour workday; sitting for a total of about six hours in an eight-hour workday. Id. at 594. Plaintiff was also restricted to frequently balancing, stooping, kneeling and crawling, occasionally climbing ramps and stairs and crouching, and never climbing ladders, ropes or scaffolds. Id. at 595. Plaintiff was also to avoid concentrated exposure to extreme heat, extreme cold, and "fumes, odors, dusts, gases, poor ventilation, etc." Id. at 597. Dr. Charles Settle, a medical consultant, noted that there were medical source conclusions about claimant's limitations or restrictions that were significantly different from his findings. Id. at 599. Explaining why these conclusions were not supported by the evidence in the file, Dr. Settle stated, [p]anelist assessment that the claimant is capable of lifting and carry (sic) 50 lbs does not allow for combined effects of COPD, Lspine [degenerative disc disease] and obesity. Therefore,

this [medical source opinion] is not given great weight." Id.

On August 18, 2011, another vocational consultant completed a vocational analysis. Id. at 242-47. On this report, Plaintiff was marked as "sedentary" for exertional capabilities, and was restricted to lifting ten pounds maximum, and less than ten pounds frequently; standing/walking for two hours a day; and sitting for six hours a day. Id. at 242. Plaintiff was restricted to frequently balancing, stooping, kneeling and crawling; occasionally climbing ramps and stairs and crouching; and never climbing ladders, ropes, or scaffolds. Id. The consultant also indicated that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, and to "[f]umes, odors, dusts, gases, poor ventilation, etc." Id. Plaintiff was also moderately limited in the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to respond appropriately to changes in the work setting. Id. Plaintiff had no marked limitations. Id. This assessment also listed several other jobs that Plaintiff had the capacity to perform. Id. at 244. These were civil-service clerk, identification clerk and charge-account clerk. Id.

At the end of the assessment, the vocational consultant included a "Drummond and Dennard Acquiescence Rulings Rationale." Id. at 246. On this form, the consultant indicated that new evidence presented was not material because "although claimant has one additional exacerbation of COPD [with] inpatient treatment, the evidence does not support improvement or worsening of overall functioning." Id. The consultant adopted Plaintiff's date of birth, education and ability to perform other work from the prior decision, but no other findings because "they are

13

irrelevant to the current findings." Id.

On September 1, 2011, Plaintiff visited Southridge Psychological. Id. at 619-24.
Plaintiff showed "slight improvement" in her goals and objectives. Id. at 619. Plaintiff reported
that she "was turned down for [disability] again. She is angry about this. Feels she has worked
most of her life and deserve (sic) to get back some of what she put into the system." Id. Plaintiff
also noted a "'sad'" mood "but denie[d] significant depression, d[id] not feel like meds need to
be changed to address this." Id. at 622.

On October 27, 2011, Plaintiff failed to show for an appointment at Centerstone. Id. at
616-18. On January 10, 2012, Plaintiff visited Centerstone. Id. at 604-06. Plaintiff reported that
she was "distressed by another denial of disability application" and "'sad' but denies significant
depression, does not feel like meds need to be changed to address this." Id. at 604-05.

On January 20, 2012, Plaintiff visited Southridge Psychological. Id. at 613-15. Plaintiff
reported a depressed mood. Id. at 613. On February 2, 2012, Plaintiff returned to Southridge
Psychological. Id. at 609-12. Plaintiff reported that she "is in a lot of pain today. She says she
feels bad everyday." Id. at 609. Plaintiff also reported "sleeping better and this helps with her
irritability." Id.

On March 2, 2012, Plaintiff failed to show for an appointment at Centerstone. Id. at 607-
08. On March 31, 2012, Plaintiff's insured status under Title II expired.

### B. Conclusions of Law

A "disability" is defined by the Social Security Act as an inability "to engage in any
substantial gainful activity by reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1); see also 42

U.S.C. § 1382c(a)(3). A reviewing court's evaluation of the Commissioner's decision is based

upon the record made from the administrative hearing process. Jones v. Sec'y, Health and

Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of review is limited to

determination of (1) whether substantial evidence exists in the record to support the

Commissioner's decision, and (2) whether any legal errors were committed in the process of

reaching that decision. Landsaw v. Sec'y of Health and Human Servs., 803 F.2d 211, 213 (6th

Cir. 1986). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)

(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)).

    "A decision concerning a claimant's eligibility for social security benefits is an 'initial

determination' under the social security regulations. An initial determination is binding unless

the claimant requests reconsideration or the Commissioner revises its decision." Drummond v.

Comm'r of Soc. Sec., 126 F.3d 837, 841 (6th Cir. 1997). Plaintiff did not request review of the

hearing decision. Thus, ALJ Dougherty's decision is the final determination of Plaintiff's DIB

claim from March 3, 2008 to October 18, 2010. This determination is "subject to the doctrine of

administrative res judicata. [...] Absent evidence of an improvement in a claimant's condition, a

subsequent ALJ is bound by the findings of a previous ALJ." Id. at 841-42. See also Dennard v.

Sec'y of Health and Human Servs., 907 F.2d 598 (6th Cir. 1990).

    The claim at issue here was adjudicated by ALJ Michelle Thompson. Noting Drummond,

this ALJ concluded, "[t]he residual functional capacity given below is the same residual

functional capacity given by ALJ Brian Dougherty in the previous decision. As discussed below, there is no material evidence indicating that [Plaintiff's] condition changed since the previous finding. Neither has there been a change in the law, regulations or rulings affecting the finding, or the method for arriving at the finding." (Docket Entry No. 14 at 19). As to Plaintiff's RFC, ALJ Thompson stated:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she is limited to occasionally lifting ten pounds; frequently lifting five pounds; standing/walking up to two hours in an eight-hour workday for 30 minutes at a time; sitting six hours in an eight-hour workday for 45 minutes at a time; occasionally pushing/pulling; never climbing ladders; occasionally climbing stairs or crouching; and frequently balancing, stooping, kneeling, or crawling. Additionally, the claimant requires a sit/stand option; should avoid concentrated exposure to fumes and dust; can understand, remember, and carry out simple and detailed instructions and tasks; can interact with the public, co-workers, and supervisors; and can adapt to infrequent gradual change.

Id. at 24.

Plaintiff contends that the ALJ failed to consider all of her impairments, specifically obesity, failed to complete a function-by-function assessment as required by SSR 96-8p, and that the vocational expert in the second hearing was precluded under Drummond and Dennard from finding Plaintiff able to complete past relevant work as a manager of a financial establishment.

Plaintiff asserts that the second ALJ did not adequately evaluate Plaintiff's obesity or the effects of her obesity on her other physical conditions as required by SSA Regulation 02-1p. Yet, the second ALJ included obesity as one of Plaintiff's severe impairments and specifically stated:

> Pursuant to SSR 02-1p, the undersigned has considered whether the claimant's obesity, in concert with another impairment, meets or equals any of the listed

impairments. The undersigned concludes that it does not. There is not another impairment that, by itself, meets the requirements of a listing. There is not an impairment that, in combination with obesity, meets the requirements of a listing. There is no evidence that the claimant's obesity affects the claimant's ability to ambulate. Finally, there is not a combination of impairments that is equivalent in severity to a listed impairment.

Id. at 22.

Further, this ALJ adopted the findings of ALJ Dougherty, who previously considered

Plaintiff's DIB claim. ALJ Dougherty stated:

> [T]he undersigned has specifically considered claimant's obesity. The claimant is 63 inches tall and weighed 240 pounds as of the hearing date. [At the hearing at issue here, Plaintiff reported weighing 170 pounds]. Under the National Institutes of Health criteria, this translates to a body mass index of 42.5 which is considered obesity class III. (Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults, NIH No. 98-4083). Obesity can cause limitations of functions such as sitting, standing, walking, lifting, carrying, pushing and pulling. It can also affect postural functions such as climbing, balancing, stooping, and crouching. The claimant's ability to perform routine movement and necessary physical activity within the work environment has been impaired by her obesity. The combined effects of her obesity with her other impairments is greater than might be expected without the obesity and has been taken into consideration in formulating the above residual functional capacity.

Id. at 105.

"Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants." Bledsoe v. Barnhart, 165 F. App'x 408, 411-12 (6th Cir. 2006). Here, ALJ Thompson properly considered Plaintiff's obesity. ALJ Thompson listed obesity first among Plaintiff's severe impairments. When determining Plaintiff's restrictions, ALJ Thompson also relied on reports by medical consultants

who noted Plaintiff's obesity. Specifically, ALJ Thompson gave "great weight" to the physical RFC conducted on August 17, 2011. (Docket Entry No. 14 at 26).

In this assessment, Dr. Charles Settle notes that although a medical source statement is available for him to consider, the "[p]anelist assessment that the claimant is capable of lifting and carry[ing] 50 lbs does not allow for [the] combined effects of COPD, Lspine [degenerative disc disease] and obesity. Therefore, this [medical source opinion] is not given great weight." Id. at 599. Dr. Settle's comment reflects that he did consider the combined effects. The ALJ then relied upon the "great weight" given to this opinion. "[T]he ALJ does not need to make specific mention of obesity if [she] credits an expert's report that considers obesity." Bledsoe, 165 F. App'x at 412 (quoting Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004)). Therefore, the Court concludes that the ALJ adequately addressed Plaintiff's obesity and the effect it has on her other physical impairments.

Next, Plaintiff contends that the ALJ erred by failing to complete a function-by-function analysis in the RFC as required by SSR 96-8p. Specifically, Plaintiff asserts error with the ALJ's statement that "the claimant requires a sit/stand option" without also providing how long Plaintiff would need to sit and stand; Plaintiff also contends that there is no evidence that a sit/stand option is available in her past relevant work.

SSR 96-8p states "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The assessment of physical abilities includes "sitting,

18

standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." 20 CFR 404.1545(b).

Plaintiff contends that the ALJ erred by requiring a sit/stand option without specifying for how long Plaintiff should stand and sit. Yet, the ALJ addresses these restrictions, prior to giving the sit/stand restriction, by limiting Plaintiff to standing/walking for thirty minutes at a time and sitting for forty-five minutes at a time. Id. at 24. The consultants who reviewed Plaintiff's case allowed a much lighter restriction. Dr. Donita Keown, who examined Plaintiff but was given "little weight" by the ALJ, limited Plaintiff to sitting for two hours at a time, standing for one hour at a time, and walking for one hour at a time. Id. at 438. Medical consultant Dr. Martha Goodrich did not check the available box for "must periodically alternate sitting and standing to relieve pain or discomfort." Id. at 562. Medical consultant Dr. Charles Settle, to whom the ALJ gave "great weight," likewise did not check the sit/stand option. Id. at 594. Although the ALJ noted that Plaintiff "stated she could only stand for about 10 minutes at a time," and Plaintiff "reported that she spent three hours a day off her feet with them elevated," the ALJ also determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id. at 24-25. Accordingly, the Court concludes that the ALJ's restriction of standing/walking for thirty minutes at a time and sitting for forty-five minutes at a time is reasonable and should be read in conjunction with the ALJ's requirement that Plaintiff have a sit/stand option.

Plaintiff next challenges the consideration of the second vocational expert's testimony at

19

the hearing conducted by ALJ Thompson. As an initial matter, ALJ Thompson should not have

considered the testimony of a second vocational expert unless she found the first vocational

expert's testimony deficient. Acquiescence Ruling 98-3(6), derived from Dennard, provides:

> [This Ruling] applies to a finding of the demands of a claimant's past relevant work,
> under 20 CFR 404.1520(e) or 416.920(e), which was made in a final decision by an
> ALJ or the Appeals Council on a prior disability claim. In addition, because a
> finding of a claimant's date of birth (for purposes of ascertaining a claimant's age),
> education or work experience, also involves a finding of fact, relating to a claimant's
> vocational background, which would not ordinarily be expected to change, this
> Ruling also shall apply to a finding of a claimant's date of birth, education or work
> experience required under 20 CFR 404.1520(f)(1) or 416.920(f)(1).

> When adjudicating a subsequent disability claim with an unadjudicated period arising
> under the same title of the Act as the prior claim, adjudicators must adopt such a
> finding from the final decision by an ALJ or the Appeals Council on the prior claim
> in determining whether the claimant is disabled with respect to the unadjudicated
> period unless there is new and material evidence relating to such a finding or there
> has been a change in the law, regulations or rulings affecting the finding or the
> method for arriving at the finding.

Id.; Ferguson v. Astrue, No. 3:10-0936, 2011 WL 3566366, at *13 (M.D. Tenn. Aug. 15, 2011),

report and recommendation adopted, 2011 WL 3904120, at *1 (M.D. Tenn. Sept. 6, 2011).

("[U]nder AR 98-3(6), the doctrine of collateral estoppel precludes an ALJ from reconsidering

the issue of a plaintiff's ability to perform his past relevant work when a prior determination has

already been made in a final decision for a previous application, and there is no evidence that

incomplete or incorrect data was used in the prior determination."). Here, ALJ Thompson did

not note that the vocational expert's opinion was different from the first vocational expert's or

provide a reason for diverging from the first vocational expert's opinion.

Thus, the Court concludes that ALJ Thompson should not have considered the second

vocational expert's opinion. The Court therefore will consider the testimony of the first

vocational expert when evaluating Plaintiff's claims.

When ALJ Dougherty presented Plaintiff's RFC to the first vocational expert, the vocational expert opined that "[j]ust on these limitations, I believe that ... the check cashier job would still be available, I believe, Your Honor." (Docket Entry No. 14 at 66). Plaintiff listed her past relevant work as a "manager - clerk" at a "loan company." Id. at 180. The first vocational expert interpreted this position as equivalent to a "check cashier. There's not really a DOT for ... Cash Advance in the DOT. So, I believe it pretty well fits check cashier, and that is DOT 211.462-026." Id. at 60.[2]

Finally, in connection with Plaintiff's claim that ALJ Dougherty did not adequately describe the sit/stand option, Plaintiff asserts that there is not any evidence that work as a check cashier allows the sit/stand option. SSR 83-12 provides guidance for ALJs when claimants require a sit/stand option. SSR 83-12 advises that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base." Here, ALJ Dougherty included Plaintiff's sit/stand option in the RFC, and the first vocational expert opined that Plaintiff would still be able to perform work as a check cashier that is substantially similar to her past relevant work. Yet, Plaintiff did not object to this

---

[2]Plaintiff did not object at the hearing to the vocational expert's determination that Plaintiff's past relevant work was as a check cashier and cannot now rely on the difference between the description of these positions as a basis to remand this claim. Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006) ("[Plaintiff] did not bring the vocational expert's mistake to the ALJ's attention. Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct. ... Because [Plaintiff] did not bring the conflict to the attention of the ALJ, the ALJ did not need to explain how the conflict was resolved.").

conclusion at the first hearing. Coulter v. Comm'r of Soc. Sec., 24 F. App'x 305, 307 (6th Cir. 2001) ("[The ALJ] determined that [Plaintiff]'s situation did not fit squarely within the grids and so consulted a vocational expert in an effort to arrive at a just solution. [Plaintiff] did not register any objection to the hypothetical question posed to the vocational expert and his answer ... was not challenged."); see also Martin, 170 F. App'x at 374. Accordingly, for these reasons, the Court concludes that the ALJ's decision is supported by substantial evidence and should be affirmed and that Plaintiff's motion for judgment on the record (Docket Entry No. 17) should be denied.

An appropriate Order is filed herewith.

ENTERED this the _31st_ day of August, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge